UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 6:11-CR-66-ART-REW-2 |
| | ) | No. 6:15-CV-218-ART-REW |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| CORINNE SHERMAN, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Movant, Corinne Sherman, is a federal inmate. DE #142 (Motion), at 1. On November 30, 2015,[1] Sherman filed a *pro se*[2] motion, later supplemented by a memorandum of law and transcript excerpts, under 28 U.S.C. § 2255. *See generally* DE ##142; 146-2; 146-3. The Court granted, on particular terms, the Government's motion to find waiver of attorney-client privilege. DE #152 (Order). The United States responded in opposition. DE #156 (Response). Sherman replied. DE #157 (Reply). The matter is ripe for consideration. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #142) and issue **NO** Certificate of Appealability.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Sherman affirmed under penalty of perjury that she mailed the motion, per prison mail, on November 30, 2015. DE #142, at 12.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

1

## I.      BACKGROUND INFORMATION

On September 21, 2011, a grand jury indicted Sherman on four child-pornography-related charges. DE #1 (Indictment). She (with her Co-Defendant husband) went to trial, and the jury convicted on all counts. DE #87 (Jury Verdict). Judge Thapar sentenced Sherman on September 10, 2013. DE #119 (Sentencing Minute Entry). Movant received a total prison sentence of 360 months followed by a lifetime term of supervised release (although she may petition for early termination after 10 successful years on supervision). DE #120 (Judgment). Sherman appealed; the Sixth Circuit affirmed, except concerning one supervised release term, DE #136 (Sixth Circuit Order), which the District Court vacated on remand. DE #138 (Order). On November 30, 2015, Sherman timely submitted a § 2255 motion to vacate. DE #142. The Government responded. DE #156. Sherman replied. DE #157. The motion stands ripe for review. The Court wholly rejects each of Movant's varied claims and recommends dismissal. Also, no basis exists for a Certificate of Appealability.

## II.      STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if her sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A

defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

III.    **ANALYSIS**

In her § 2255 motion (and charitably construed), Sherman requests relief based on (1) an allegation that the Court "sentenced the Movant to erroneous information and enhancements contained in the PSR without submitting these enhancements to the jury," *see* DE #142, at 4; (2) an alleged due process violation when the Court "sentenced movant to cross referenced statute(s) without the prosecution proving those statute(s) having been applicable to the crime that the Movant was being sentenced to," *see id.* at 5; (3) an alleged Eighth Amendment violation(s) with varied sub-parts but generally concerning the "harshness" of the sentence, *see id.* at 8; and (4) multiple allegations of ineffective assistance of counsel contained in the motion and the supplemental

3

memorandum (as well as other tangential matters in the memorandum), *see id.* at 6; DE #146-2. All theories plainly fail under 28 U.S.C. § 2255 and the applicable standards.

    A.    *Claim One—Sentencing Sherman "to erroneous information and enhancements contained in the PSR without submitting these enhancements to the jury"*

    Sherman's first argument, in its entirety, is as follows:

> Ground One: Violation of Movant's 10th and 14th Amendment Rights afforded to her via the Constitution of the United States[.] The Sentencing Court violated the Movant's 10th and 14th Amendment rights when it sentenced the Movant to erroneous information and enhancements contained in the PSR without submitting these enhancements to the jury. The Movant had a jury trial and the additional information used to enhance the Movants sentence was decided by the United States, not the State or the people. This is in violation of the Movant's Constitutional Right(s) which are guaranteed to her by the Constitution.

DE #142, at 4 (all as in original). The United States responded in opposition. DE #156, at 3-6.

    First, the Court addresses procedural default generally as to Sherman's petition. The Government raised it. DE #156, at 3-4, 8. "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). "In the case where the defendant has failed to assert [her] claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion [s]he also must show either that (1) [s]he had good cause for [her] failure to raise such arguments and [s]he would suffer prejudice if unable to proceed, or (2) [s]he is actually innocent." *Id.* Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented Defendant from raising the issue on direct appeal, "not . . . whether counsel erred[.]" *Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986). The procedural default

doctrine only bars "claims that could have been raised on direct appeal, but were not[.]" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

Sherman defaulted the argument regarding PSR enhancements. She raised only a challenge to the propriety of certain PSR enhancements on direct appeal. *See* DE #136 (Sixth Circuit Order) (extensively addressing the applied PSR enhancements). This is markedly different from making the distinct *Alleyne* / judicial-factfinding argument in the § 2255 motion. She "failed to assert" such a claim on direct appeal and thus may not argue it on habeas. Sherman has also defaulted her subsequent due process and Eighth Amendment claims. She likewise did not raise those on appeal. Sherman now, as to any assertion, does not show either good cause for the default or prejudice, and she makes no showing of actual innocence. Sherman shows no external cause that prevented her from raising these issues, concerning matters central in the proceedings below, on appeal, and she makes no reference to (and thus does not satisfy) the prejudice prong. Further, Sherman makes no credible or supported claim of actual innocence. She offers no new evidence. She has not shown "that it is more likely than not that no reasonable juror would have convicted [her] in the light of . . . new evidence." *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995). "[C]hallenges to the weight or credibility of the evidence do not establish innocence[.]" *Goward v. United States*, 569 F. App'x 408, 411 (6th Cir. 2014). Accordingly, Sherman procedurally defaulted these habeas claims.

On the merits of the PSR enhancement claim, Sherman's argument is utterly indeterminate, vague, and without merit.[3] She faults the Court for sentencing her "to erroneous information and enhancements contained in the PSR without submitting these

---

[3] For instance, the Tenth Amendment obviously has no applicability in this federal criminal context.

enhancements to the jury," but fails to identify *a single specific* piece of information or enhancement about which she complains. The thrust of this general argument appears to be a concern over judicial factfinding.

In this context, the Sixth Circuit has squarely rejected her argument: "Because the federal sentencing guidelines are advisory, rather than mandatory, . . . judicial factfinding that affects the guidelines calculation does not fit within the category of facts required under *Alleyne*[4] to be found by a jury beyond a reasonable doubt." *Rogers v. United States*, 561 F. App'x 440, 444 (6th Cir. 2014); *see also United States v. Hornback*, Nos. 3:10-CR-13-DCR, 3:13-CV-7296-DCR, 2014 WL 2768872, at *15 (E.D. Ky. June 18, 2014) (rejecting, under *Apprendi*, the argument that the Government must prove to the jury a child pornography enhancement that only "adjust[s] a defendant's sentence within a prescribed statutory range, pursuant to advisory sentencing Guidelines"); *Settles v. United States*, No. 13-2543-STA-cgc, 2015 WL 7302788, at *4 (W.D. Tenn. Nov. 18, 2015) (relying on *Rogers* to deny a § 2255 motion alleging an improper sentence enhancement based on judge-found facts). Indeed, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *United States v.*

---

[4] *Alleyne v. United States* extended the rule that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt" to include "any fact that increases the mandatory minimum[.]" 133 S. Ct. 2151, 2155 (2013). *Alleyne* itself recognized that not every "fact that influences judicial discretion must be found by a jury. [The Supreme Court] ha[s] long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* at 2163. The Sixth Circuit has declined to expand *Alleyne* to a district court's application of a "cross reference" under the Guidelines and "to judicial fact-finding that does not increase the mandatory minimum." *See, e.g.*, *United States v. Becton*, 593 F. App'x 469, 472-73 (6th Cir. 2014) (citing cases and also distinguishing *Peugh v. United States*, 133 S. Ct. 2072 (2013)); *United States v. James*, 575 F. App'x 588, 593-95 (6th Cir. 2014) (closely examining *Alleyne*, carefully weighing arguments, and concluding not to expand *Alleyne* beyond its four corners).

*Booker*, 125 S. Ct. 738, 750 (2005). "It is clear" in the Sixth Circuit "that a district court may make its own factual findings regarding relevant sentencing factors, and consider those factors in determining a defendant's sentence." *United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006). There are "numerous recent decisions of [the Sixth] Circuit that reiterate the propriety of sentence enhancements made on the basis of judge-found facts under the now-advisory United States Sentencing Guidelines." *United States v. Clark*, 193 F. App'x 562, 567 (6th Cir. 2006). The Circuit "accept[s] . . . judicial factfinding in sentencing proceedings[.]" *Id.* Here, the District Court, under these clear principles, did not contravene the Sixth Amendment because any judicial factfinding leading to PSR-based sentencing enhancements did not increase the maximum penalty or mandatory minimum. Sherman's claim has no merit.

Finally, as the Sixth Circuit already held and explained, and as the United States persuasively argues, even if the Court did err in applying any challenged enhancement, the error would be harmless because it did not, in fact, even impact Sherman's Guideline range. *See* DE #136 (Sixth Circuit Order), at 4 ("Even if the district court had sustained all three of Sherman's objections to sentencing enhancements, the Guidelines would still recommend life in prison. As such, any error was harmless."). Accordingly, especially where, as here, the District Court applied a substantial downward variance (360-month sentence from a 1,200-month recommendation), there is no basis for § 2255 relief.

        B.        *Claim Two—Alleged Due Process Violation*

Second, Sherman argues:

> Movant's due process rights (5th Amendment) were violated when the sentencing court sentenced movant to cross-referenced statute(s) without the prosecution proving those statute(s) having been applicable to the crime that the Movant was being sentenced to. The Supreme Court has

7

> ruled that vague interpretation that is used to sentence a defendant to 15 years or more is unconstitutional.

DE #142, at 5 (all as in original). The United States responded in opposition. DE #156, at 6. As discussed above, this claim is procedurally barred and thus fails independently on this ground. Alternatively, however, the Court assesses the merits.

Sherman's argument, as above, is distinctly indeterminate. She fails to identify *any* specific "cross-referenced" statute on which the Court sentenced her without a jury convicting. Instead, as the United States argues, the Court sentenced Sherman for violating statutes that the jury found, and the Indictment alleged, she violated. *Compare* DE #1 (Indictment), *with* DE #87 (Verdict), *and* DE #120 (Judgment) (listing same statutes).

The lone inconsistency (and the Court is unsure if this is even the import of Sherman's argument) concerns the reference in Counts 1 & 2 to 18 U.S.C. § 2. The Indictment charged Sherman with violating §§ 2251(a) & 2. DE #1, at 1-2. The jury convicted Sherman *only* nominally of the underlying substantive § 2251(a) charges, *see* DE #87, at 5-6. In the Judgment, the District Court "adjudicated" Sherman "guilty of" §§ 2251(a) & 2, but only listed "Aiding and Abetting the Production of Child Pornography" in the "Nature of Offense" section. DE #120, at 1.

18 U.S.C. § 2 says that anyone who "aids, abets, counsels, commands, induces or procures [the] commission [of an offense against the United States] is punishable as a principal." *See also United States v. Moore*, 460 F.2d 1265, 1265 (6th Cir. 1972) (*per curiam*) ("[A]n aider or abettor can be convicted as a principal."). Here, the jury convicted Sherman of being a principal (as the Indictment charged), and accordingly she was punishable as a principal. The jury likewise convicted co-defendant Rickey Sherman

under the same charges. The Judgment, in the "Nature of Offense" section, phrased the crimes as ones of aiding and abetting (and Judge Thapar focused on that aspect during sentencing, *see* DE #134 (Sent. Tr.), at 36), but the authorized penalties are the same. Regardless, the Judgment specifically convicted Sherman of the principal § 2251(a) offenses. The Sixth Circuit has explained:

> The aiding and abetting language in count one did not charge a separate offense, but rather provided an alternative theory for finding assault. Aiding and abetting is a theory of liability embodied in every federal indictment, whether or not specifically charged; it is not a distinct substantive crime. . . . So, the addition of the aiding and abetting language in count one of the indictment did not convert the count of a single assault into a count of assault *and* aiding and abetting assault. . . . If some jurors concluded that Perry aided Pedro in assaulting Officers King and Bussey, and some found that Perry directly assaulted Bussey, it was permissible for the jury to convict him on count one. Since the criminal liability for principals and aiders and abettors is identical, *see* 18 U.S.C. § 2, there is no requirement that a jury unanimously find each was either a principal or an aider and abettor.

*United States v. Perry*, 401 F. App'x 56, 61-62 (6th Cir. 2010) (emphasis in original; footnote removed); *see also, e.g.*, *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005) ("In the context of aider and abettor liability, there is a single crime that the defendant is charged with committing; [s]he could commit that offense by directly performing illegal acts h[er]self, or by aiding, abetting, counseling, commanding, inducing, or procuring the commission of the offense. Whichever, the defendant (if convicted) is liable as a principal."); *id.* at 820 ("Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense. For this reason, the government had no obligation to elect between charging a substantive offense and charging liability on an aiding and abetting theory, nor was the district court obliged to give a specific unanimity instruction."). The Sixth Circuit

thus "consider[s] aiding and abetting merely a theory of liability, and not an offense distinct in and of itself." *United States v. Taniguchi*, 49 F. App'x 506, 520 (6th Cir. 2002) (citing *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir. 2002)). An aiding and abetting theory is "embodied in every federal indictment, whether specifically charged or not[.]" *United States v. McGee*, 529 F.3d 691, 695 (6th Cir. 2008) ("[A]n indictment need not charge or refer to 18 U.S.C. § 2 to support a conviction based on a theory of aiding and abetting."). Thus, the references to the aiding and abetting theory are really only variants of Sherman's underlying criminal liability for violating § 2251(a). Judge Thapar specifically instructed the jury on this. *See* DE #85, at Instruction No. 12.

Even assuming a typographical discrepancy in one place in the Judgment, there is no basis for § 2255 relief on this record.[5] The Judgment also specifically captures Sherman's conviction for § 2251(a), which the Indictment charged and on which the jury convicted. *See, e.g.*, *United States v. VanderZwaag*, 467 F. App'x 402, 408 (6th Cir. 2012) ("While it is impossible to determine whether the jury convicted Daniel or Patricia or either as a principal or as an aider or abettor, or both . . . there is no requirement that the district court provide the jury with a special verdict form for an aiding and abetting charge. This omission can only constitute plain error where the record is devoid of evidence pointing to guilt." (internal quotation marks removed)). The jury unanimously convicted Sherman of the § 2251(a) substantive offenses, and the authorized punishment for the offense and the aiding-and-abetting charge are identical. Further, "an indictment need not specifically charge 'aiding and abetting' or 'causing' the commission of an

---

[5] Sherman cites no authority for her separate, uncertain suggestion concerning vagueness and a 15-year threshold. The Court's best guess is that this is a mistaken reference to the Armed Career Criminal Act and *Johnson v. United States*, 135 S. Ct. 2551 (2015), but that statute and case obviously have no applicability to this child pornography sentence. *See infra* note 14.

offense against the United States, in order to support a jury verdict based upon a finding of either." *McGee*, 529 F.3d at 695; *cf. Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986) ("[A] defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process.").[6] The Indictment, verdicts, and Judgment all concern § 2251(a). The conviction and judgment were proper, and there is no basis for habeas relief.

       C.      *Claim Three—Alleged Eighth Amendment Violation*

Next, Sherman contends:

> Violation of Movants 8th Amendment Right –Cruel and unusal punishment, when the prosecutions misconduct was allowed to influence the jury when the Court allowed past negotiations to be entered into trial process. This behavior influenced the Court as well as the jury. In particular the sentencing court. The punishment – incarceration time pronounced from the sentencing court was cruel and unusualy especially since the evidence was all circumstantial and the movant was continually cooperative with the government in an effort to show that she was not involved in the production of the evidence being held against her.

> The prosecution presented the information as a form of entrapment, which is amounted to misconduct as well as cruel. Which in turn garnished the movant a conviction that is deemed unusually cruel due to the harshness.

DE #142, at 8 (all as in original). The United States responded in opposition. DE #156, at 6-8. As above, this claim is procedurally barred and fails independently on this ground. Alternatively, however, the Court assesses the merits.

---

[6] *Hill*, and certain other cases that this Recommendation cites, were § 2254 cases. Their analyses also apply to a § 2255 theory. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other."). Both statutes exist, in large part, to vindicate constitutional principles.

First, the Eighth Amendment, which generally prohibits cruel and unusual punishment, obviously has no applicability to an independent claim that "the prosecution[']s misconduct was allowed to influence the jury" and that "the Court allowed past negotiations to be entered into [the] trial process." If the Court construed the claims to be independent—*i.e.*, not subsumed within the current Eighth Amendment cover—they would not be procedurally barred, but they would fail for the reasons the Sixth Circuit has already explained. DE #136, at 5-7 (rejecting Sherman's misconduct argument on the flagrancy prong: "Ultimately, to the extent the prosecutor's question was inappropriate, it was not flagrant."). The question at issue concerned a possible "attempt to elicit statements made during plea negotiations" (as Sherman's argument insinuates), but as the Court of Appeals noted, the District Court "instructed the jury to ignore it." *Id.* at 6; *see United States v. Johnson*, 581 F.3d 320, 330 (6th Cir. 2009); *United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001) ("Ordinarily, a court should not overturn a criminal conviction on the basis of a prosecutor's comments alone, especially where the district court has given the jury an instruction that may cure the error. . . . As a general matter, juries are presumed to understand and follow directions from the court.").[7] The Sixth Circuit could not have been clearer: "[T]he question does not warrant a new trial." DE #136, at 6. For the same reasons, and because Sherman cannot here relitigate the decided question, neither does it warrant § 2255 relief.

---

[7] As the Sixth Circuit noted, Mr. Edwards objected to questioning related to a possible plea agreement, and the Court sustained the objection. *See* DE ##81 (Order), at 4-5 (*e.g.*, "After all, a defendant's plea negotiations are not proper considerations for the jury."); 130 (Trial Tr.), at 133-35 ("Ladies and gentlemen, I sustained the objection to that question, and I ask that you strike it from your memory. It shouldn't be considered at all, like my previous striking of objections.").

Sherman's core Eighth Amendment claim, however, is that the "incarceration time pronounced from the sentencing court" violated the Constitution because "the evidence was all circumstantial," she "was continually cooperative with the government," and the sentence was tainted by its "harshness." DE #142, at 8. This, liberally construed, appears to be a challenge to her 360-month sentence under the Eighth Amendment's "narrow proportionality principle." *See Ewing v. California*, 123 S. Ct. 1179, 1185 (2003) (opinion of O'Connor, J.) (upholding sentence of 25 years to life for shoplifting 3 golf clubs). The Eighth Amendment prohibits sentences that are "grossly disproportionate" to the crime. *Id.* at 1190. Grossly disproportionate sentences are "exceedingly rare." *Id.* at 1185-86. A successful challenge requires "an extreme disparity between crime and sentence[.]" *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). The Sixth Circuit has rejected Eighth Amendment challenges to lengthy child pornography sentences, including another 360-month term (as Sherman received). *United States v. Hart*, 635 F.3d 850, 859 (6th Cir. 2011) (joining sister Circuits upholding § 2251's mandatory minimum and affirming 180-month child pornography sentence "[g]iven the seriousness of the conduct punished by 18 U.S.C. § 2251"); *United States v. Black*, 239 F. App'x 210, 215 (6th Cir. 2007) (affirming 360-month child pornography prison sentence, and a life term of supervised release, in face of an Eighth Amendment challenge).[8] In light of these considerations, Sherman's Eighth Amendment claim, even if not defaulted, is patently meritless. The jury found the facts supporting conviction, and Judge Thapar's sentencing

---

[8] The Sixth Circuit recently, for instance, upheld against Eighth Amendment challenges a 1,395-month § 924(c)-based sentence, *United States v. Carpenter*, 819 F.3d 880, 892 (6th Cir. 2016), and a "well below the Guidelines range" 360-month mail fraud and money laundering sentence, *United States v. McQueen*, 636 F. App'x 652, 663-65 (6th Cir. 2016). Sherman's sentence, of course, was but a fraction of the 1,200-month sentence the Guidelines recommended.

already passed muster on appeal. Sherman's sentence was not grossly disproportionate to her crimes, under recognized constitutional principles.

### D.     Multiple Claims of Ineffective Assistance of Counsel (IAC)

Sherman next makes several IAC arguments. When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the

14

judge or jury." *Id.* at 2069. In the sentencing context, ineffective assistance "can result in *Strickland* prejudice because any amount of additional jail time has Sixth Amendment significance." *Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) (internal quotation marks, alteration, and citation omitted). Sherman raises a host of *Strickland* assertions, each of which the Court rejects.

      1.    Failing to Object to the PSR Enhancements & Failing to Object "to the prosecution not proving their allegations beyond a reasonable doubt"

First, Sherman argues:

> Counsel was ineffective when he did not object to the erroneous enhancements contained in the PSI nor did he object to the prosecution not proving their allegations beyond a reasonable doubt. Counsel did not adequately dispute nor did he exhaust all avenues to defend Movant. But counsels' unprofessional errors, Movant would have been facing less time than she is currently facing.

DE #142, at 6 (all as in original). The United States responded in opposition. DE #156, at 14-15.

The conclusory argument fails. Sherman does not identify *any* particular "erroneous enhancement" to which her counsel, Hon. Eric S. Edwards, did not object. The PSR indicates that defense counsel made 7 objections. *See* DE #125 (PSR), at 21-23. Prior to sentencing, Judge Thapar noted Mr. Edwards's "number of objections to the PSR[.]" DE #132 (Tele. Conf. Tr.), at 4. At sentencing, Judge Thapar noted Sherman's "several objections[.]" DE #134, at 2. Sherman confirmed that she received the PSR and reviewed it with her counsel. *Id.* Mr. Edwards stated under oath, via affidavit, "I am uncertain as to which enhancements Ms. Sherman claim[s] were erroneous and to which objection was not made. I recall no such enhancements to which objection was not made." DE #156-1, at 1. Mr. Edwards certified that he thoroughly discussed the PSR and

15

the possible enhancements with Sherman. *Id.* He swore, "Ms. Sherman, after reviewing the PSR with me and while using the guidelines manual, agreed to the objections which were made and agreed there were no other objections to make." *Id.* at 1-2. The Court notes that, due in large part to Mr. Edwards's advocacy, Sherman received a 360-month sentence, nearly a fourth of the Guidelines' recommended 1,200 months (creating a poor climate for lawyer criticism here). The District Court comprehensively discussed the defense's objections at sentencing, and Mr. Edwards advocated ardently for Sherman. Counsel is not ineffective simply because the Court may have disagreed and overruled certain objections. *Wiley v. Sowders*, 647 F.2d 642, 648 (6th Cir. 1981) ("The requirement that counsel be effective is not a result-oriented standard. Counsel is required to be competent, but not necessarily victorious."); *see also, e.g.*, *Baxter v. United States*, Nos. 1:12 CR 238, 1:15 CV 2056, 2015 WL 9268917, at *6 (N.D. Ohio Dec. 21, 2015) (denying § 2255 motion because "counsel was thoroughly prepared and familiar with the relevant facts and law" although "the Court ultimately disagreed with counsel on a key issue in the case–whether the terrorism enhancement applied"). On this detail-less claim, Sherman shows neither deficient performance nor prejudice.

Sherman's similarly amorphous, unsubstantiated arguments concerning counsel's failure to "object to the prosecution not proving their allegations beyond a reasonable doubt"[9] and failing to "adequately dispute" or "exhaust all avenues to defend" her are utterly devoid of any factual basis. There is no intelligible way to probe Sherman's allegations or provide specific analysis. The Court simply notes that the record is clear that Mr. Edwards zealously represented Sherman throughout the case, including the jury trial and sentencing. The Court explicitly instructed the jury that it could only find guilt if

---

[9] If this relates to sentencing enhancements, the Court has already plowed that ground.

the prosecution proved the case beyond a reasonable doubt. *See, e.g.*, DE #85 (Instructions), at 3 ("This presumption of innocence stays with him or her unless the government presents evidence here in court that overcomes the presumption, and convinces you beyond a reasonable doubt that he or she is guilty. . . . You must find a defendant not guilty unless the government convinces you beyond a reasonable doubt that he or she is guilty."). The jury found Sherman guilty beyond a reasonable doubt when it returned a guilty verdict. Further, Mr. Edwards did, in fact, challenge the prosecution's proof via a comprehensive Rule 29 motion. The District Court rejected it, but that does not mean counsel was ineffective. DE ##82 (Minute Entry Order); 131 (Trial Tr.), at 32-45 (orally ruling); 89 (Order), at 2-4 (providing extensive analysis as to Corinne Sherman). Mr. Edwards put on a vigorous defense of Ms. Sherman. There is no basis for habeas relief on this factless claim.

### 2.    Failing to Call Certain Witnesses

Next, Sherman argues that "[c]ounsel [ineffectively] failed to put" E.R.,[10] "any of the other family members such as the childrens Grandparents and friends," and "an expert witness" on the stand to testify. DE #146-2, at 1 (all as in original). Sherman proffers that E.R.'s "testimony would have shown that the children were playing and that no adult was even present when the pictures were taken." *Id.* Sherman says that the children told the grandparents and friends "that they were close to and trusted that they took the pictures in question." *Id.* Per Sherman, the purpose of the expert would have been "to discredit the prosecutions [sic] witness that gave false testimony." *Id.* The United States responded in opposition. DE #156, at 10-12.

---

[10] Sherman referred to this person, a minor, by her real name in the memorandum, leading Judge Thapar to seal that document. *See* DE #145 (Order). The Court will refer to this person by her initials.

First—E.R. Sherman says that E.R. "would have shown that the children were playing and that no adult was even present when the pictures were taken." Even assuming this proffer of testimony—supported by utterly no competent proof in the record—is true, that is *precisely* the testimony given by M.S. Thus, E.R.'s testimony would have been duplicative; the desired testimony was already before the jury via M.S. Sherman makes no showing that the jury hearing the same testimony again would have altered the outcome of the trial. *See, e.g.*, *Calloway v. Campbell*, 72 F.3d 129, 1995 WL 746854, at *1 (6th Cir. Dec. 14, 1995) (table) (affirming § 2254 denial when, *inter alia*, a potential witness's testimony "would have at best been duplicative of Calloway's own testimony"); *Shaba v. United States*, 721 F. Supp. 132, 138 (E.D. Mich. 1989) (denying § 2255 relief because "Petitioner's counsel could reasonably have determined that Muwafaq's testimony was duplicative and decided against Muwafaq testifying").

Further, counsel's reasoned decisions as to which witnesses to call or refrain from calling are classic matters of trial strategy, which a court generally does not second-guess on habeas review. *United States v. Foreman*, 323 F.3d 498, 504 (6th Cir. 2003). Here, Mr. Edwards swore that he "interviewed E.R. on several occasions" and that E.R. "refused to say who took the pictures." DE #156-1, at 2. E.R. apparently *denied* that M.S. took them. *Id.* After M.S. testified that he did, in fact, take the pictures, the decision not to call E.R. was "made with Ms. Sherman, her husband and both counsel." *Id.* Such testimony, undercutting that of M.S., would indeed have "contradict[ed] the strongest testimony in the defendants' favor." *Id.* In light of Mr. Edwards's sworn statements, the decision not to call E.R. was certainly within the broad realm of reasonable trial strategy.

18

*Strickland*, 104 S. Ct. at 2065. Sherman shows neither deficient performance nor prejudice.

Second—the children's grandparents and friends. Sherman says that the "children told all the people that they were close to and trusted that they took the pictures in question." DE #146-2, at 1. In the motion, Sherman identifies no specific individual she wishes had testified.[11] Sherman's mother (one grandparent) in fact did testify. Sherman attaches no affidavit or proof of the testimony of any potential witness. Such a speculative claim does not lead to habeas relief. *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) ("[V]ague and speculative allegations" concerning witnesses do not entitle Petitioner to habeas relief.). Regardless, the defensive theory that the children took the pictures came out through M.S.'s and Sherman's own testimony. Mr. Edwards stated via affidavit that he interviewed other family members and the other children's statements were "vague[,] elusive, and inconsistent[.]" DE #156-1, at 2. In such circumstances, any decision to not call potential witnesses clearly fell within the broad range of acceptable trial strategy. *Strickland*, 104 S. Ct. at 2065. Sherman's generalized speculation as to potential (mostly unidentified) witnesses' testimony cannot be the basis for an ineffective assistance claim. *See, e.g.*, *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) ("To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result."). There is no ineffectiveness here.

---

[11] In the Reply, Sherman identifies "grandpa Tony and Step-grandma Kim[.]" DE #157, at 1 (all as in original). She attaches, however, no affidavit or proof on what Tony's or Kim's testimony would have been. She attaches no affirmative proof to show (or even allow weighing of whether) the testimony of any potential witness would have changed the outcome of the case.

Third—an expert witness. On this argument, Sherman simply says, "Defense counsel did not put an expert witness on the stand to discredit the prosecutions witness that gave false testimony." DE #146-2, at 1 (all as in original). This argument fails for a variety of reasons. First, Sherman identifies no specific expert that she wishes had testified. She offers no affidavit and no proof of potential testimony. She does not even identify the area of expert proof desired or precisely which Government witness she wished to discredit. Even if the Court could discern some factual basis for the claim, Sherman seems to confuse lay factual witnesses with expert witnesses. Sherman had a full opportunity, and did, present her defense to the jury and attempt to discredit the prosecution's witnesses. She testified on her own behalf, and other witnesses backed up her theory. The prosecution told a different story, but the issues of witness credibility and believability were before the factfinder and solely a matter for the jury to decide.

Finally, the defense did, in fact, hire an expert. *See* DE #29 (Order) (authorizing funds to hire a digital forensics expert to analyze the memory card's metadata). That expert, per Mr. Edwards, "was unsuccessful in determining" dates of production and deletion "from the camera or memory card." DE #156-1, at 3. Mr. Edwards perceived that this expert's "testimony at trial would have only bolstered the government's witness[.]" *Id.* This reasoning and determination surely were reasonable. *Strickland*, 104 S. Ct. at 2065; *Bowling v. Parker*, 344 F.3d 487, 507-08 (6th Cir. 2003) (rejecting as "clearly" meritless a failure-to-call-an-expert argument because "[m]any sensible reasons could justify this decision" and when the "testimony was not going to help" the defensive theory). Edwards rationally determined to forgo an expert that may have assisted the prosecution. There is no basis to find ineffectiveness on this claim.

20

3.     Failing to Impeach or Exclude Amanda Wyatt as a Witness

Sherman's next volley is wide-ranging, but mainly focuses on her counsel's treatment of witness Amanda Wyatt.[12] The United States responded in opposition. DE #156, at 12.

Wyatt testified that Mr. Sherman employed her at Truck Town Repair. DE #128, at 133. Wyatt even lived with the Shermans (apparently as part of a group sexual relationship) for some time. Mr. Edwards strenuously objected to portions of Wyatt's testimony. *See id.* at 135-37. The Court contemporaneously overruled that objection and more thoroughly explained its reasoning in a subsequent Minute Entry Order. *See* DE #79, at 2-3. Wyatt described an "odd" event in the children's bedroom involving both Shermans (which was the basis for the conspiracy charge). *Id.* at 138-40. She further testified that she once saw two concerning images on the computer at Truck Town Repair. *Id.* at 142-44. Wyatt was "positive" that one image in proof, A50, was "on the computer" at Truck Town. *Id.* at 146-47.

---

[12] Sherman concludes this section of her memorandum by declaring, "Defense counsel should have focused more on the facts of this case." DE #146-2, at 3. The target of this statement appears to be the allegation that "only . . . 16" pictures were evidence. *Id.* Such a vague and indeterminate assertion concerning counsel is no basis for habeas relief. Further, there is no *de minimis* limitation on a child pornography conviction. *See, e.g.*, *United States v. Miller*, 594 F.3d 172, 189-90 (3d Cir. 2010) ("It is true, as Miller contends, that the number of images of child pornography that he possessed—eleven— pales in comparison to the hundreds of images of adult pornography. . . . Furthermore, possession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks removed)) (affirming a special condition of supervised release). Sherman's assertion of picture quantity is inaccurate anyway, per the trial testimony. As the Court recounts elsewhere, Mr. Edwards advocated zealously for Sherman throughout the proceedings and competently addressed the case specifics. The Court has reviewed the entire record and every page of the transcripts. Mr. Edwards plainly provided more than competent representation to Sherman throughout the case and robustly put on the defense that Sherman continues to assert in the habeas filing. Counsel accurately summarized that he "support[ed]" Sherman's theory of the case "through multiple witnesses' testimony." DE #156-1, at 3.

Mr. Edwards effectively (indeed, vigorously) cross examined Wyatt. He brought out fundamental inconsistencies in her testimony (including on basic matters, such as her number of children). *See, e.g.*, *id.* at 147. Mr. Edwards explored potential areas favorable to Sherman, including possible timeline discrepancies. *Id.* at 148-50. Wyatt clarified, on Mr. Edwards's probing, that image A50 does not depict a child's genitals. *Id.* at 152-53. Mr. Edwards exposed potential Wyatt motives for testifying. *Id.* at 156-57.

Sherman faults counsel for not moving to exclude Wyatt as a witness and for not highlighting certain proof inconsistencies. The only asserted bases for exclusion are that Wyatt is a "known drug user" and an "admitted prostitut[e,]" and that she gave allegedly false testimony. DE #146-2, at 2. None of these reasons or theories would have resulted in exclusion. *E.g.*, *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) ("[T]he witnesses were drug users[.]"); *United States v. Ahmas*, 943 F.2d 53, 1991 WL 165655, at *2 (6th Cir. Aug. 29, 1991) (table) ("[P]roof that a witness engaged in prostitution has little relevance to the witness' credibility[.]"). The jury fully had Wyatt's credibility before it to evaluate, and there was no basis to wholesale preclude her from testifying. There certainly are some areas where the jury may have questioned the proof; for instance, Wyatt said she saw an image on the Truck Town computer, but Sergeant Smith testified that law enforcement recovered no images from that computer. Mr. Edwards effectively questioned Wyatt on these topics. Mr. Sherman, per the trial testimony, had skill with computers and perhaps was able to delete, beyond forensic location, any disputed image. Regardless, the point is that the jury fully had before it the possibly conflicting trial testimony and Wyatt's credibility, and it found Sherman guilty. Mr. Edwards competently examined Wyatt and ably challenged her testimony. He

22

particularly "believed" that exposing Wyatt's "willingness to lie" on the stand "would actually benefit" Sherman. DE #156-1, at 3. Such a measured trial strategy, successful or not, undoubtedly is reasonable. There is no basis to find ineffectiveness on this record.

4.      Failing to Challenge the Interstate Commerce Nexus

Next, Sherman says: "Interstate of Commerce should have been the biggest question in this case. Congress did not mean for this to be used in this way. . . . It has become a huge stretch to say a Camera made in China and SD Card amde in Tiawan proves Interstae of Commerce." DE #146-2, at 3-4 (all as in original). The United States responded in opposition. DE #156, at 12-13. The Court treats this argument as alleging IAC regarding a failing to challenge the crimes' interstate or foreign nexus.[13]

Mr. Edwards affirmed under oath that the "issue of interstate commerce . . . was one of the first things I discussed as a possible defense to Ms. Sherman." DE #156-1, at 4. Counsel conducted "much research" and "determined that the applicable law extended . . . to the equipment utilized to create the images and was apposite to our theory." *Id.* (perhaps intending inapposite or opposite). Mr. Edwards "discussed the research with Ms. Sherman and discussed the lack of a viable legal basis in which to support a motion to dismiss." *Id.*

Here, as Sherman indicates, the evidence at trial established that the relevant camera was "[m]ade in China," and the SD card was manufactured in Taiwan. DE #128 (Trial Tr.), at 36. As counsel's research accurately revealed, the Sixth Circuit has squarely held such a basis sufficient to satisfy the interstate or foreign commerce element.

---

[13] Congress has the power "[t]o regulate Commerce with foreign Nations, and among the several States[.]" U.S. Const. art. I, § 8, cl. 3. Courts have analyzed this clause at length, including in the context of upholding child pornography criminalization. *E.g.*, *United States v. Bowers*, 594 F.3d 522, 527-29 (6th Cir. 2010).

*Bowers*, 594 F.3d at 528 (affirming conviction where "the only evidence that the government had put forth in support of the interstate or foreign commerce connection was that the film used was produced out of state" (internal alterations and quotation marks removed)); *id.* at 529 ("Congress could have believed that even wholly intrastate production and possession involving a particular individual could be diverted eventually to the interstate market because of the high demand for child pornography on that market."); *see also United States v. Sanchez*, 440 F. App'x 436, 438 (6th Cir. 2011) (affirming interstate nexus when computer that recorded the sex act "was purchased in Colorado"); *United States v. Chambers*, 441 F.3d 438, 451 (6th Cir. 2006) (affirming conviction when the only evidence offered at trial of an interstate connection was the defendant's use of Polaroid film produced in either Massachusetts or the Netherlands); *United States v. Starr*, No. 5:04-091-DCR, 2013 WL 1644867, at *6 (E.D. Ky. Apr. 16, 2013).

Here, the camera and SD card used in the child pornography crimes at issue were produced out of state—indeed, internationally. Sherman's argument, contrary to binding Sixth Circuit precedent, is baseless and fails. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Sherman shows neither deficient performance nor prejudice.

### 5.    Failing to Move to Sever the Defendants

In the final paragraph of her supplemental memorandum, Sherman asserts: "Counsel failed to seperate Corrine Sherman and her late husband Ricky Sherman. They should have had seperate trials because Mrs. Sherman did not have prior convictions. Mr. Sherman's prior convictions were of similar nature. Mrs. Sherman was convicted by the

jury being 'tainted' because of her co-defendants priors, not hers." DE #146-2, at 4 (all as in original). The United States responded in opposition. DE #156, at 13-14.

The claim is meritless. Mr. Edwards detailed his analysis in the affidavit: "Neither defendant made a statement against the other or themselves which supported such a motion [to sever]. . . . Further, Ms. Sherman was adamant about being tried in conjunction with her husband. She felt like it would be obvious that she committed no criminal acts and that she would be able to clear him as well. As to Mr. Sherman's prior convictions, the prejudicial nature of them w[as] not disclosed to the jury. . . . His counsel was very cautious in so doing as not to open the door for prejudicial information to reach the jury." DE #156-1, at 4-5.

"Generally, there exists a preference in the federal system for joint trials of defendants who are indicted together. The jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately. However, courts should grant a severance if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Cobleigh*, 75 F.3d 242, 247-48 (6th Cir. 1996) (internal quotation marks removed). Sherman had the burden "to produce a strong showing of factually specific and compelling prejudice that will mislead or confuse the jury." *Id.* at 248 (internal quotation marks removed).

Clearly, Mr. Edwards's decision not to seek severance, based on the particulars of the affidavit, falls within the broad range of effective trial strategy. *Strickland*, 104 S. Ct. at 2065. Further, the parties specifically avoided at trial the potential prejudicial effect of Mr. Sherman's prior conviction. *See, e.g.*, DE #128 (Trial Tr.), at 38 (counsel referring to

Mr. Sherman "doing something wrong" and that he "shouldn't be around a computer"); *id.* at 83-86, 98 (discussing a limiting instruction, and specifically naming the "unlawful access to a computer" conviction, in a deliberate effort to *avoid* prejudice); DE #129 (Sealed Trial Tr.), at 2 (counsel stating that the conviction "[d]oesn't sound like child pornography type stuff" and generally explaining the joint defensive trial strategy); DE #79 (Order), at 1-2 (expounding on the trial ruling); DE #85, at Instruction No. 26 ("You have heard that Mr. Sherman was on probation at the time some of the events in this case took place. Mr. Sherman was previously convicted of unlawful access to a computer in the second degree. This information was provided to you as background evidence so you understood why law enforcement confiscated Mr. Sherman's computer. You may not consider that crime or the fact that Mr. Sherman was on probation for any other purpose and must determine this case based only on the evidence presented in this courtroom." (paragraph break omitted)). Sherman herself acknowledged that "they did not put [on] the specifics of his prior convictions." DE #157 (Reply), at 2. Judge Thapar specifically instructed the jury that it must evaluate the proof as to each Defendant individually. *See, e.g.*, DE #85, at Instruction No. 1 ("Your second duty is to take the law that I give you, apply it to the facts, and decide if the government has proved **each defendant** guilty beyond a reasonable doubt." (emphasis added)); *id.* at Instruction No. 2 ("You must find a defendant not guilty unless the government convinces you beyond a reasonable doubt that **he or she** is guilty." (emphasis added)); *id.* at Instruction No. 10 ("Your job is to decide if the government has proved each defendant guilty.").

Finally, Sherman clearly, based only on a scant paragraph with no evidentiary support, does not make a "strong showing of factually specific and compelling prejudice"

by which joinder would mislead or confuse the jury. *Cobleigh*, 75 F.3d at 248. She does not "demonstrate the jury's inability to distinguish the evidence relevant to each defendant." *Id.* The record indicates the jury convicted Movant because, based on the proof presented, it found her *individually* guilty of the crimes beyond a reasonable doubt, not because of her husband's prior criminal record or the joint nature of the trial. *Compare* DE #87, at 1-4 (Verdicts as to Rickey Sherman), *with id.* at 5-8 (Verdicts as to Corinne Sherman). Sherman certainly has not proved otherwise. Counsel is not ineffective for failing to file a meritless motion. *Holmes v. United States*, 281 F. App'x 475, 482 (6th Cir. 2008). Movant shows neither deficient performance nor prejudice.

### E.   Final Matters Raised in the Supplemental Brief

Sherman raises two additional matters in the supplemental brief.[14] First, she says that the "children should have also had an attorney present during question at the TLC

---

[14] Additionally, over six months after filing the § 2255 motion, Sherman filed a motion to amend, seeking to assert a claim premised on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held unconstitutional the residual clause of the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)(1) and its definitions). DE #158 (Motion). To give Sherman a full opportunity to present her claims, the Court **GRANTS** DE #158 insofar as it seeks amendment. However, the Court, essentially as a matter of screening, *see* Rule 4(b), Rules Governing Section 2255 Proceedings, **recommends** that the District Court **dismiss** any *Johnson*-based claim as patently meritless. The Court did not sentence Sherman under ACCA at all (much less utilizing its residual clause). Instead, Sherman violated various child pornography-related statutes. Further, Sherman did not qualify for, and the Court did not apply, the career offender Guideline (thus, again, not using its residual clause either). *See* U.S.S.G. §§ 4B1.1 & 4B1.2; DE ##125 (PSR) & 134 (Sent. Tr.) (neither mentioning career offender qualification); *United States v. Pawlak*, ___ F.3d ___, No. 15-3566, 2016 WL 2802723, at *4 (6th Cir. May 13, 2016) (applying "*Johnson*'s rationale . . . with equal force to the Guidelines' residual clause"). Sherman's motion makes no real effort to explain why or how *Johnson* applies to her case. Sherman—sentenced neither under ACCA nor the career offender Guideline—obviously presents no *Johnson* issue, and the District Court should dismiss the claim as frivolous. *See, e.g.*, *Carter v. United States*, No. 1:15-CV-1196, 2016 WL 3027197, at *3 (W.D. Mich. May 27, 2016) (*Johnson* and *Pawlak* "do not apply because Movant[, who violated only 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii),] was not sentenced under the residual clause of the career-offender guideline.").

House." DE #146-2, at 3 (all as in original). Second, she argues that "[d]uring the sentencing hearing prosecuting attorney and the Court both agree that there were no images found on the computers. This alone should have been enough to lessen her sentence or acquit all together." *Id.* (all as in original). The United States responded in opposition. DE #156, at 6 n.1. These claims, untethered to IAC allegations, are, as with other dispatched claims, procedurally barred and fail on that basis, but the Court alternatively assesses the merits.

Sherman claims that "using [the children's] testimony" after government agents interviewed her children without an attorney present violated Movant's due process rights. DE #146-2, at 3. She says that the "children could have been led or badgered into anything." *Id.* Sherman cites no authority for her due process theory, and the Court is aware of none. *Cf., e.g.*, *United States v. Moore*, 493 F. App'x 680, 686-87 (6th Cir. 2012) (admission of prior inconsistent statement did not "violate [Defendant]'s right to due process and a fair trial"); *Kansas v. Ventris*, 129 S. Ct. 1841, 1847 (2009) (holding that Defendant's prior statement made without counsel present "was admissible to challenge [his] inconsistent testimony at trial"). The claim of undue influence is quintessential speculation, unconnected to any record or evidentiary support. Regardless, at trial, only M.S. testified, and he fully repudiated his prior statements implicating Sherman.[15] His testimony was subject to full trial assessment and testing and was doubtlessly beneficial to the defense.

---

[15] During the trial testimony, Judge Ingram "manage[d] the proceedings at the child's [offsite] location to make sure that the child[] d[id] not interact during [his] testimony and that there [we]re no improper influences on the child[.]" DE #76 (Order), at 3. M.S. testified that he took the pictures himself and that generally Sherman was not involved. *See* DE #130 (Trial Tr.), at 13-34. The jury heard M.S.'s prior inconsistent statements, but he testified under oath that he took the pictures. *See also* DE #127 (Hrg. Tr.)

On the second matter, concerning sentencing, Judge Thapar comprehensively considered all § 3553 factors in formulating the sentence, including the nature and circumstances of the offense, as well as mitigative aspects as to Sherman. *See* DE #134, at 71 ("I think this sentencing . . . is a struggle for me because I think there's plenty in the world of child predators where I have no struggle. I don't lose a minute of sleep when they're the worst of the worst. . . . But Ms. Sherman isn't in that camp, and I think we all agree with that."); *see also id.* at 74-78 (evaluating the factors and commenting that the matter was "probably the hardest case I've had to sentence"). Judge Thapar gave Sherman a significantly lower sentence than the Guidelines recommended; the one fact Sherman identified does not in any way suggest a greater variance.

As to Sherman's acquittal argument, the proof was adequate to support a conviction. *E.g.*, DE #136 (Sixth Circuit Order), at 6 ("[T]he evidence against Sherman, though circumstantial, was strong.") (recounting numerous witnesses' testimony); DE #128 (Trial Tr.), at 20 (Sergeant Smith testifying that he found, on the SD card, "several images, 30, approximately 30 images that contained child pornography."). Smith readily admitted he found no child pornography images on any computer, *id.* at 40 ("Did you find any child pornography on those computers? No."); *id.* at 100 (testifying that every child porn image came from the SD card), and the jury convicted. The District Court overruled Sherman's motion for acquittal. DE ##82 (Minute Entry Order); 131 (Trial Tr.), at 32-45 (orally ruling); 89 (Order), at 2-4 (providing extensive analysis as to Corinne Sherman).[16] That investigators found no child pornography images on the Truck

---

(discussing this topic). The children had a guardian *ad litem* and advocate, Lucas Joyner. M.S.'s credibility and truthfulness were matters for the jury to judge.

[16] Sherman off-handedly remarks, in the context of restating her jury-rejected theory of the case, that "[t]here was no mens rea ever proven." DE #146-2, at 2. The jury

Town computer was a well-covered fact at trial, and given the evidence of Sherman's guilt on all counts, that obviously does not necessitate acquittal. Sherman shows no basis for relief.

F.    *Evidentiary Hearing*

Sherman does not request an evidentiary hearing. Nevertheless, the Court must hold one unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Sherman's claims do not warrant a hearing; the § 2255 motion filings and case record (to include all relevant transcripts) conclusively show, for the reasons stated above, that Sherman's claims fail. There are no contested factual issues that justify a hearing. The record, which needs no further development, forecloses relief.

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific

disagreed, finding the elements of each offense satisfied. The Court also disagreed when it overruled the motion for acquittal. Sherman—in this lone factless and analysis-free statement—does not show otherwise.

issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; her *Strickland* and other claims all conclusively fail, both on substantive and, as to many, procedural grounds. Reasonable jurists would not find the Court's determination on the merits debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.      RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #142) and issue **NO** Certificate of Appealability.

*     *     *     *     *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in

waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

To the extent required (particularly as to the n.14 and the *Johnson* matters Sherman raised in the amendment (DE #158)), this Recommended Disposition gives Movant explicit prior notice of the recommendation of dismissal, made, in effect, under Rule 4(b). *Cf. Shelton v. United States*, 800 F.3d 292, 294-96 (6th Cir. 2015) (discussing Rule 4(b) dismissal on timeliness grounds and stating: "Not only is a notice requirement compatible with the rule, it also promotes accuracy at the screening stage[.] . . . A notice requirement gives petitioners the opportunity to bring essential information not evident from the face of the motion to the court's attention[.]"); *Persinger v. Warden*, No. 2:15-cv-2653, 2015 WL 5385005, *3 (S.D. Ohio Sept. 14, 2015) (providing express notice of right to object to recommended summary dismissal of § 2254 petition on timeliness grounds to comply with notice requirement outlined in *Shelton*). If Sherman has arguments to make in opposition to dismissal, as to any *Johnson* argument, she must properly object and present those arguments to the District Judge.

This the 27th day of June, 2016.

Signed By:

*Robert E. Wier*

United States Magistrate Judge