UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Criminal No. 11-66-ART-(2) |
| v. | ) | |
| CORRINE SHERMAN, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Corrine Sherman is an inmate at FCI Aliceville, a federal prison Aliceville, Alabama. Proceeding without counsel, Sherman moved to vacate her sentence under 28 U.S.C. § 2255. R. 142. Magistrate Judge Robert E. Wier then filed a thorough Recommended Disposition, recommending that the Court dismiss Sherman's claims for relief and issue no certificate of appealability. R. 160. Sherman now objects, on nine grounds. R. 161. She has also filed an addendum with another claim for relief, which Judge Wier never had the chance to consider. R. 162. But Sherman failed to show that Judge Wier got something wrong or that she is otherwise entitled to relief. The Court will therefore adopt Judge Wier's recommendations, dismiss Sherman's claims, and issue no certificate of appealability.

### I. Objections One and Two: Procedural Default

Judge Wier found that most of Sherman's § 2255 claims are procedurally defaulted because Sherman failed to raise them on appeal. Sherman objects to that finding. R. 161 at 1–2 (objections one and two). This Court must review de novo any of a magistrate judge's findings to which a defendant objects. *See* 28 U.S.C. § 636(b)(1).

Section 2255 "is not a substitute for direct appeal." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). If a defendant fails to assert a claim on appeal, she has "procedurally defaulted" that claim and cannot bring it later under § 2255. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982). This rule does not apply to Sherman's claims for ineffective assistance of counsel, which defendants may raise for the first time under § 2255. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). But it does apply to Sherman's three other claims: (1) that the Court sentenced her based on information the jury never considered, allegedly violating the Tenth and Fourteenth Amendments, R. 142 at 4; (2) that the Court sentenced her under statutes that she was not convicted under, allegedly violating the Fifth Amendment, *id.* at 5; (3) and that the Court allowed prosecutorial misconduct to occur and to influence the jury, allegedly violating the Eighth Amendment, *id.* at 8.

From the face of her appeal, it is clear that Sherman never raised these constitutional claims before the Sixth Circuit. *See* Brief of the Defendant-Appellant Corrine Sherman, *United States v. Sherman*, No. 13-6227, D.E. 36 at 16–33 (6th Cir. April 2, 2014) [hereinafter "Appellant's brief"] (arguing that various errors require vacating the conviction and sentence, but not that they violated the Constitution). Sherman admits as much. R. 161 at 1–2. Thus, Sherman cannot raise those claims under § 2255—unless, that is, she can show one of two things: (1) that she had good cause for failing to raise the claims, and would suffer prejudice if unable to raise them now, or (2) that she is actually innocent. *Regalado*, 334 F.3d at 528; *see also Bousley v. United States*, 523 U.S. 614, 622 (1998).

Sherman does not claim to be actually innocent. Rather, she says that she discussed the above arguments with her appellate attorney, who then "failed to present" them on direct

appeal. R. 161 at 1–2. Her attorney's failure, Sherman argues, is a "good cause" for why she failed to assert these arguments before. *Id*. at 1.[1]

To show "good cause" for failing to raise a claim, Sherman must show that some "objective" and "external" factor "impeded [her] counsel's efforts" to raise it. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such factors include "interference by officials," *Brown v. Allen*, 344 U.S. 443, 486 (1953), or that the factual or legal grounds for a certain argument were not yet established—and not yet available—at the time of appeal, *see Reed v. Ross*, 486 U.S. 1, 13 (1984). But such factors do not include attorney error. *Murray*, 477 U.S. at 488. As long as Sherman's appellate attorney was not "constitutionally ineffective," then any alleged error on the attorney's part is not a good cause for defaulting on a claim. *Id*.

Here, Sherman's only explanation for her procedural default is that "counsel erred." *Id*. She does not argue that the error rendered her attorney constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Nor could she, at least not successfully. Even though Judge Wier found that that these three claims were procedurally defaulted, he nevertheless considered their merits. And he found that they lack any:

As for the claim that the Court sentenced Sherman based on evidence that the jury never considered, Sherman merely states what a court is allowed to do. *See United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006) ("It is clear under the law of this [c]ircuit that a district court may make its own factual findings regarding relevant sentencing factors, and consider those factors in determining a defendant's sentence.").

---

[1] Although Judge Wier found three claims defaulted, Sherman objects only as to two. But because the Court must hold pro se filers to "less stringent standards" than trained lawyers, the Court will assume that Sherman has objected to Judge Wier's finding as to all three claims. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

As for the claim that the Court sentenced Sherman under statutes that she was never convicted under, Sherman misstates what the Court did. Sherman was indicted, convicted, and sentenced for producing child pornography, a violation of 18 U.S.C. § 2251(a). *See* R. 1 (indictment); R. 87 (verdict); R. 120 (judgment). Sherman points to no place in the judgment or sentencing transcript where the Court considered some random part of the U.S. Code. That place does not exist.[2]

As for the claim that the Court allowed prosecutorial conduct to influence the jury, Sherman misunderstands what the Eighth Amendment prevents. The Eighth Amendment prevents cruel and unusual punishment, not asking witnesses inappropriate questions—which is what Sherman calls "prosecutorial misconduct." R. 142 at 8. To the extent Sherman argues that her conviction is cruel and unusual given the prosecutor's alleged "misconduct," the Sixth Circuit has held that a court can wipe away any impropriety by "issu[ing] a curative instruction." *United States v. Johnson*, 581 F.3d 320, 330 (6th Cir. 2006). And as the Sixth Circuit has recognized, that is exactly what this Court did. R. 136 at 6 (Sixth Circuit order) ("At trial, the court determined the question was [improper] . . . and instructed the jury to ignore it."). To the extent Sherman argues that her 360-month sentence is cruel and unusual, the Sixth Circuit upholds similar (and longer) sentences routinely.[3] Given the seriousness of

---

[2] Making an effort to consider Sherman's argument in a favorable light, Judge Wier notes that the indictment and judgment also reference 18 U.S.C. § 2, which states that anyone who "aids" or "abets" a crime "is punishable as a principal." *See* R. 160 at 7–11. The jury found Sherman guilty of violating 18 U.S.C. § 2251(a), but not specifically of violating § 2. *See* R. 87 at 5–6. The distinction makes no difference, however, because either as an aider, abettor, or principal, the punishment can be the same. *See United States v. Moore*, 460 F.2d 1265, 1265 (6th Cir. 1972) (per curiam) ("[A]n aider or abettor can be convicted as a principal."). And in any event, Sherman was convicted—and sentenced—as a principal. *See* R. 87 at 5–6; R. 120 at 1.

[3] *See United States v. Black*, 239 F. App'x 210, 215 (6th Cir. 2007) (affirming 360-month child-pornography sentence); *see also United States v. Carpenter*, 819 F.3d 880, 892 (6th Cir. 2016) (affirming 1,395-month sentence

Sherman's crimes, her sentence is not "grossly disproportionate" to her conduct. *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion).

Finally, as for the claim that the Court violated Sherman's Tenth Amendment rights: That Amendment does not give rights; it withholds power from Congress. *See New York v. United States*, 505 U.S. 144, 155–56 (1992). In the specific context of Sherman's trial and sentence, the Tenth Amendment does not apply.

In sum, if Sherman's appellate attorney had raised these claims before the Sixth Circuit, they would have gotten Sherman nowhere. Her attorney was not constitutionally ineffective for deciding to forego those claims, because "[o]mitting meritless arguments" is not a "professionally unreasonable" decision to make. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Thus, Sherman has revealed no "objective" or "external" factor that impeded her from raising these arguments before. *Murray*, 477 U.S. at 488. Nor has she explained why she would suffer prejudice if unable to raise those arguments now. If they would have gotten her nowhere before the Sixth Circuit, they would get her nowhere here.

As such, Sherman has not shown why the Court should make an exception for her Fifth, Eighth, Tenth, and Fourteenth Amendment claims. Those claims are procedurally defaulted, and provide Sherman no grounds for relief.

## II. Objection Three: Improper Question

Judge Wier next found that Sherman is not entitled to relief based on her claim that the prosecutor asked an improper question at trial. R. 160 at 12. During cross-examination,

---

for aiding and abetting armed robberies); *United States v. Hart*, 635 F.3d 850, 859 (6th Cir. 2011) (finding the 180-month mandatory minimum for child-pornography offenses appropriate "[g]iven the seriousness of the" offense).

the government whether she was "considering pleading guilty to this offense?" R. 130: Corrine Sherman, TR (Day 2) at 133. Sherman's lawyer objected. *Id*. Since the government cannot use a defendant's statements during plea negotiations against her at trial, *see* Fed. R. Evid. 410, the Court sustained the objection and instructed the jury to disregard the question, *see* R. 130: Corrine Sherman, TR (Day 2) at 135. According to Judge Wier, that instruction was enough. Sherman objects, asserting that the question was so improper the Court should have declared a mistrial then and there. R. 161 at 2 (objection three).[4] In failing to do so, she seems to argue, the Court committed an error that it must fix by vacating her conviction.

As noted above, the Sixth Circuit has already addressed this argument. *See* R. 136 at 5–7. The court walked through the four-part test to determine whether the question was so "flagrant[ly]" improper as to require a new trial. *Id*. at 5 (quoting *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008)). At every step, the court found that the question was not. *Id*. at 6–7. This Court is not at liberty to retrace those steps now, because a defendant may not use § 2255 to "relitigate" questions that an appellate court has already decided. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999). That is, unless the petitioner can show some "exceptional circumstances" or "intervening change in the case law." *Id*.

Sherman has shown neither. If Sherman raises any new argument at all, it is that "the jury was made up of human beings" with human "tendencies"—one such tendency being to perk up when a prosecutor asks a defendant if she is considering a guilty plea. R. 161 at 2. But that circumstance is far from "exceptional." *Wright*, 182 F.3d at 467. Juries are, by and

---

[4] Although Sherman procedurally defaulted the argument that the improper question as an Eighth Amendment violation, she argued to the Sixth Circuit that the question was an error egregious enough to require vacating the conviction. *See* Appellant's Brief at 30–33. That argument is therefore preserved.

large, made of humans. Humans are, of course, not perfect. But for now, they're the best we've got. And at least they can "understand" and "follow" orders. *United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001). So jurors "are presumed" to follow their instructions, including when the judge tells them to disregard certain questions, as judges do in every trial. *Id*. This trial was no different: The prosecution asked an improper question, and the Court told the jury to ignore it. As the Sixth Circuit has already said, that instruction scrubbed the proceeding of any undue prejudice, and thus "the [prosecutor's] question does not warrant a new trial." R. 136 at 6. It also does not warrant relief.

### III. Objections Four, Five, and Six: Ineffective Assistance of Counsel

Moving on to some substance, Sherman seeks relief on various ineffective-assistance grounds, all of which Judge Wier found unavailing. R. 160 at 14–27. Sherman objects to that finding as it relates to three of her claims. R. 161 at 2–3 (objections four, five, and six).

#### A. Failure To Call Certain Witnesses

Sherman argues that her trial attorney was ineffective because he never called to the stand Sherman's seven-year-old daughter, some other family members, or an expert. R. 146-2 at 1. Attorneys enjoy a "wide range" of discretion in crafting trial strategy. *Strickland*, 466 U.S. at 689. That strategy entails choosing witnesses. *See United States v. Foreman*, 323 F.3d 498, 503 (6th Cir. 2003). A defendant who seeks to brand her attorney as ineffective must therefore "overcome the presumption" that the attorney's choice not to call a witness could "be considered sound trial strategy." *Strickland*, 466 U.S. at 689. More specifically, she must show that no reasonable attorney would have made the same choice, and that but for the choice the outcome of her trial would probably have been different. *Id*. at 690, 694.

7

Sherman shows neither. She says her daughter would have testified that the children in the pornographic images were simply playing around and taking pictures of themselves, with no adults present. R. 146-2 at 1. But another witness (M.S.) had already told the jury exactly that. R. 130: M.S., TR (Day 2) at 13. Omitting such "cumulative evidence" is a strategic choice—even if Sherman thinks it was the wrong one, it does not make her attorney constitutionally ineffective. *Frazier v. Jenkins*, 770 F.3d 485, 505 (6th Cir. 2014).

Sherman also says the children's "grandparents and friends" would have corroborated that the children took the pictures themselves. R. 146-2 at 1. But she does not explain what these family members—including "grandpa Tony and step-grandma Kim," whom she names specifically—would have said. *See* R. 161 at 2. Without knowing how the witnesses could have helped, the Court cannot call Sherman's attorney ineffective for failing to use them. *See Landrum v. Mitchell*, 625 F.3d 905, 921 (6th Cir. 2010). Even assuming that they could have corroborated other witnesses, since those other witnesses had already given testimony, "more testimony" along the same lines "would have had little impact." *Id*.

Finally, Sherman says that her attorney should have called an expert "to discredit [a] prosecution witness." R. 146-2 at 1.[5] But she does not identify any expert that her attorney should have called. Nor does she explain why she needed an expert to discredit the witness. Her own briefing shows that she did not: To prove that the witness gave false information, Sherman cites to a rather effective cross-examination *by her attorney*. *See* R. 146-3. After

---

[5] Although Judge Wier found that Sherman's lawyer acted reasonably in deciding not to call all three types of witnesses, Sherman objects only as to the first two. Applying more lenient standards to pro se filers, however, the Court will again assume that Sherman meant to object as to all three. *Haines*, 404 U.S. at 520.

her attorney had already done the job, "[u]sing an expert" to do the job over again "would not likely have strengthened" Sherman's case. *Landrum*, 625 at 921.

At best, then, these witnesses would have only repeated what others had said before. Thus, Sherman's attorney acted reasonably in deciding not to call them, and their absence did not prejudice her defense. *See Frazier*, 770 F.3d at 505. Sherman argues in response that "the duplicative nature" of their testimony "would have been beneficial" to her case. In fact, she says, "the likelihood of a not guilty verdict" would have "increas[ed] tremendously." R. 161 at 2. If the jury was not swayed by the testimony the first time, it is hard to say that they would have been swayed the second, third, or fourth. And it is impossible to say that Sherman's counsel was constitutionally ineffective for opting not to put the jury through that experience. Sherman is therefore not entitled to relief on this ground.

### B. Failure To Exclude a Witness

Sherman next calls her attorney ineffective because he never tried to exclude Amanda Wyatt, a prosecution witness. Sherman does not say that Wyatt's testimony was irrelevant. Rather, Sherman says, Wyatt gave inconsistent testimony, was "a known drug user," an "admitted prostitut[e]," and had a motive to testify against Sherman. R. 146-2 at 2; *see also* R. 161 at 3. Except for the prostitution, those are all reasons to doubt Wyatt's credibility. *See United States v. Smith*, 831 F.2d 657, 661 (6th Cir. 1987) ("[E]ngag[ing] in prostitution . . . would have little relevance to [one's] credibility as a witness."). And lack of credibility is a reason to impeach a witness, as Sherman's attorney tried to do—at some length—while cross-examining Wyatt. R. 128: Amanda Wyatt, TR (Day 1) at 147– 58.

9

But lack of credibility is not a reason to exclude a witness altogether. After all, the jury can only tell a witness's credibility by watching her on the stand. Thus, the "principle means" for fixing the damage done by a less-than-creditable witness is "cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Sherman's attorney put those means to good use. His performance therefore was neither unreasonable nor harmful to Sherman's case, and Sherman is not entitled to relief on this ground.

**C. Failure To Sever**

Finally, Sherman argues that her attorney was ineffective because he never moved to separate Sherman's trial from her husband's. R. 146-2 at 4. Federal courts "prefer[]" to try together defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also* Fed. R. Crim. P. 8(b). But a court will sever the trials if it sees a "serious risk" that a joint trial would "compromise" one defendant's right to a fair trial or would "prevent" the jury from determining the guilty or innocence of a particular defendant. *Id*. at 539. Had Sherman asked to sever, the burden would have been hers to "make a strong showing" of a "factually specific and compelling" reason that a joint trial would "mislead or confuse the jury." *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996) (quoting *United States v. Moore*, 917 F.2d 215, 221 (6th Cir. 1990)).

Here, Sherman argues that her trial was "tainted" because her husband—and more relevantly for these purposes, her co-defendant—had prior convictions. R. 146-2 at 4. Indeed, Sherman says, the jury convicted her "because of" Mr. Sherman's priors. *Id*. That is easy enough to say, but hard to "strong[ly]" show. *Cobleigh*, 75 F.3d at 248. And Sherman offers no "specific" facts revealing that the jury blamed one Sherman for the other's past. *Id*.

10

Judge Wier, on the other hand, has collected over a page's worth of record citations showing that both Shermans got a fair trial. R. 160 at 25–26. Perhaps most importantly, Mr. Sherman's lawyer fought for a limiting instruction that "the defendant is on trial here for only for the crimes charged in the indictment, not for any other acts." R. 128: TR (Day 1) at 84. The Court gave the jury that instruction (*see* R. 85, Instruction No. 26), even though, as Sherman herself acknowledges, the government never actually told the jury "the specifics of [the] prior convictions," R. 157 at 2. Since "juries are presumed to follow their instructions," the Court's instruction "cured" any prejudice that the prior convictions might have caused Mr. Sherman. *See Zafiro*, 506 U.S. at 540 (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). What is true for Mr. Sherman is certainly true for Mrs. Sherman: If the defendant who carries the prior convictions was not prejudiced, his co-defendant was not, either. Sherman's attorney was not ineffective for failing to address a problem that did not exist. Thus, Sherman's last ineffective-assistance claim does not entitle her to relief.

## IV. Objection Nine: *Johnson*[6]

Months after filing her § 2255 motion, Sherman moved to amend it, arguing that she is also entitled to relief under *Johnson v. United States*, 135 S. Ct. 2551 (2015). Judge Wier allowed her to add the *Johnson* claim, but rejected it as plainly meritless. R. 160 at 27 n.14. Sherman objects, arguing that *Johnson* "establishes" that "residual clauses" and sentencing enhancements are "unconstitutionally vague." R. 161 at 4–5.

That is incorrect. *Johnson* held that one residual clause in particular was too vague: the clause in the Armed Career Criminal Act (ACCA) requiring that any felony involving

---

[6] The Court addresses this claim out of order because it is Sherman's only remaining substantive claim.

"serious potential risk of physical injury to another" be treated as a "violent felony." 135 S. Ct. at 2557. The Sixth Circuit has applied the same logic to the residual clause in the career-offender sentencing guideline. *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016). That makes two clauses unconstitutionally vague—not every residual clause or enhancement in the entire criminal code or sentencing guidelines.

Moreover, Sherman was not sentenced under either the ACCA or the career-offender guideline. She was sentenced under the child pornography laws and under a guideline range specific to her offense history. *See* R. 120 (judgment); R. 122 (minute entry order); R. 125 ¶¶ 23-64 (presentence investigation report) (measuring offense level). The unconstitutional residual clauses are, therefore, irrelevant. So is *Johnson*. Sherman's *Johnson* claim does not entitle her to relief.[7]

## V. Objection Seven: Evidentiary Hearing

Though Sherman did not request an evidentiary hearing, in the spirit of thoroughness Judge Wier explained why this case does not require one. R. 160 at 30. Sherman objects, and now seeks a hearing "to address the mistrial issues" and "to enter the testimonies of grandpa Tony and step-grandma Kim." R. 161 at 3–4 (objection seven) (internal quotation marks omitted).

The Court must hold an evidentiary hearing unless the record "conclusively show[s]" that a defendant "is entitled to no relief." 28 U.S.C. § 2255(b). The open sesame for such a

---

[7] Although not a *Johnson* case, Sherman also uses this objection to urge the Court to follow *United States v. Brown*, 826 F.3d 51 (2d Cir. 2016). In *Brown*, the sentencing court had given the defendant an "effective life sentence" (sixty years) primarily for causing three children "mental anguish." *Id.* at 59–60. The Second Circuit remanded for resentencing, because the sentencing judge had missed that one of those children was asleep when the defendant was taking pictures. This Court sits in the Sixth Circuit, not the Second; sentenced Sherman to thirty years, not sixty; and based that sentence on different facts than those presented in *Brown*. Thus, *Brown* is not relevant to this case.

hearing is "a factual narrative of the events" that might entitle the defendant to relief and that neither the record nor the government contradicts. *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). But if a defendant simply makes allegations that the record contradicts, or states conclusions without any facts, the doors to a hearing remain closed. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

As discussed above, neither the "mistrial" claim nor testimony from Grandpa Tony and Step-grandma Kim would entitle Sherman to relief. The record shows that no mistrial occurred. Sherman argues that, when the prosecution asked an improper question about her plea dealing, the Court should have declared a mistrial. R. 161 at 2. But that is not how trial works, and for good reason. If, every time the government asked an improper question, the Court had to halt, impanel a new jury, and start the whole thing over, Sherman would be on trial forever. The better solution is for the defense to object, for the Court to sustain, and for everyone to move on—as happened here. *See* R. 130: Corrine Sherman, TR (Day 2) at 135.

As for Grandpa Tony and Step-grandma Kim, Sherman's conclusion that they would help her case comes without any facts. Even Sherman admits that they would merely "duplicat[e]" what other witnesses already said at trial. R. 161 at 2. Evidentiary hearings are for narrating exculpatory facts, not replaying old testimony. *See Huff*, 734 F.3d at 607. Thus, neither of Sherman's reasons for seeking an evidentiary hearing entitles her to one.

### VI. Objection Eight: Certificate of Appealability

Judge Wier recommends that the Court not issue a certificate of appealability. R. 160 at 30–31. Sherman objects. R. 161 at 4 (objection eight). The Court must issue a certificate

13

of appealability when a defendant makes a "substantial showing" that she has been denied a "constitutional right." 28 U.S.C. § 2553(c)(2). When her claims are dismissed on procedural grounds, as some of Sherman's have been, the issue gets "somewhat more complicated." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Then, the defendant must show, "at least," that a reasonable judge "would find it debatable" that she has been denied a constitutional and that the Court's procedural ruling was correct. *Id.*

As explained above—and at length by Judge Wier—all of Sherman's constitutional claims lack merit. They do not implicate any novel or unsettled questions of law. Rather, they fall squarely under existing law, and, under that law, fail. Moreover, Judge Wier did not simply rule "on procedural grounds without reaching [Sherman]'s underlying constitutional claim[s]." *Id.* He considered those claims extensively. No reasonable judge could debate that Judge Wier addressed every question Sherman raised, or that he got the answers right. Thus, no certificate of appealability shall issue.

## VII. Addendum: Sentencing Reduction

After Judge Wier filed his recommended disposition, Sherman filed an addendum asking the Court to reduce her sentence. R. 162. The Court will construe the addendum as a separate motion, and order the Clerk to docket it as such. Although the motion is unrelated to Sherman's § 2255 claims, the Court will address it here to ensure that Sherman receives an audience for all her arguments.

Sherman argues that she is entitled to a three- or four-level sentence reduction for playing only a minor or minimal role in the offense. R. 162 at 4; *see also* U.S.S.G. § 3B1.2. Courts "may not" modify a sentence "once it has been imposed," subject to a few exceptions.

14

18 U.S.C. § 3582(c). The relevant exception here is that the sentencing court "may" reduce a sentence based on a guidelines range that the Sentencing Commission lowered afterwards. *Id*. § 3582(c)(2). That exception is relevant because it is the only one allowing a reduction "upon [the] motion of the defendant." *Id*.

Sherman does not identify any changes to her guidelines range. Instead, she points to a separate guidelines provision—the role reduction—that existed when she was sentenced and that she could have evoked at that time. But she did not, and, now, cannot.

* * *

For the reasons stated above and at greater length in Judge Wier's recommendations, Sherman is not entitled to relief under § 2255. Nor is she entitled to a sentence reduction. Accordingly, it is **ORDERED** as follows:

(1) Sherman's objections, R. 161, are **OVERULLED**.

(2) Judge Wier's Recommended Disposition, R. 160, is **ADOPTED** as the opinion of the Court.

(3) Sherman's motion to vacate her conviction, R. 142, is **DENIED**.

(4) The Clerk **SHALL FILE** Sherman's addendum, R. 162, as a motion to reduce her sentence.

(5) Sherman's motion to reduce her sentence, R. 162, is **DENIED**.

(6) An appropriate judgment will issue separately.

This the 12th day of September, 2016.

Signed By:
Amul R. Thapar  *AT*
United States District Judge